UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BLAKE HUVAL                                          CIVIL ACTION

VERSUS

THE LOUISIANA STATE                                 NO.: 16-00553-BAJ-RLB
UNIVERSITY POLICE
DEPARTMENT, ET AL.

RULING AND ORDER

Before the Court are the **Motions for Summary Judgment (Docs. 25 and
28)** filed by the Louisiana State University Police Department ("LSU"), the Baton
Rouge Police Department, Officer Ory Holmes, and Officer Troy McCreary. Plaintiff
Blake Huval filed oppositions (Docs. 41 and 42). Also before the Court is a **Motion
to Strike** (Doc. 61) filed by LSU. For the following reasons, the **Motions for
Summary Judgment (Docs. 25 and 28)** are **GRANTED IN PART and DENIED
IN PART**.

I.    BACKGROUND

The undisputed facts taken in the light most favorable to Plaintiff are as
follows.[1]  On Saturday, March 8, 2014, Plaintiff Blake Huval, his brother Chase
Huval, and their wives drove to dinner at the Chimes Restaurant and then went to a

---

[1] The Defendants produced video surveillance footage of the incident, which is available at
http://www.lamd.uscourts.gov/Video/HuvalvsBRPD.mp4. To the extent that Plaintiff's version of the
facts is "blatantly contradicted" by the video surveillance footage, the Court relies on the video. *Scott
v. Harris*, 550 U.S. 372, 380 (2007). The Court also notes that there are several gaps in the video, but
Defendants indicate that no other version of the video exists. (Doc. 53).

1

concert at the Varsity Theater near LSU's campus. (Doc. 25-1 at ¶ 1). At the time, Chase Huval was an off-duty state trooper. (Doc. 46-1 at 21:13–14). When the concert ended after midnight, the group walked to a nearby parking lot to meet a friend to pick them up because they had been drinking. (Doc. 25-3 at p. 17:8–19:4). Around the same time, someone alerted Officers McCreary and Holmes of the Baton Rouge Police Department, who were in a police cruiser near the Chimes, that someone was being assaulted in a parking lot nearby. (Doc. 25-7 at p. 21–22).

The officers drove toward the parking lot and saw a large fight. *Id.* at p. 22–24. They saw several people bleeding, and several people fled. *Id.* Officer McCreary began looking for one man who fled, and he eventually saw him sitting in the back of an SUV nearby in the parking lot. *Id.* at p. 27–28. When Officer McCreary saw the man in the SUV, he walked toward the car shining his flashlight. *Id.* What Officer McCreary did not know, however, is that three men had just run toward the Huvals, and they told Plaintiff's brother that someone was trying to beat them up, and they asked for help. (Doc. 25-3 at 76:22–77:9). Plaintiff's brother then let the three men sit in his car. (Doc. 77 at 77:13–78:10).

As Officer McCreary approached, he saw Plaintiff standing near the SUV holding a bottle of alcohol. (Doc. 32 at 1:16:44 AM).[2] Officer McCreary then drew his gun and held it by his side, pointing it toward the ground. (1:16:48 AM). Seconds later Plaintiff's brother walked toward Officer McCreary, stopping within a few feet from him, and he told Officer McCreary that he was a state trooper and he showed

---

[2] The Court will cite the video surveillance with the time stamp from the video.

him his state trooper badge. (1:16:52 AM; Doc. 46-1 at p. 61). He also told the officer to calm down, and that there was nothing going on. (Doc. 46-1 at 18:6–8).

Meanwhile Officer Holmes approached from the opposite direction with his taser drawn. (1:16:52 AM). While trying to show Officer McCreary his badge, Plaintiff's brother, placed his left hand on Officer McCreary's chest. (1:16:53 AM). In response, Officer McCreary immediately pushed him away. (1:16:54 AM). Plaintiff's brother recoiled back a few feet, and seconds later Officer Holmes tased him in the back. (1:16:56 AM). After being tased, he fell face first on the ground. (1:16:57 AM).

Officer Holmes then tried to grab Plaintiff, but Plaintiff stepped backwards to avoid Holmes' reach. (1:16:58 AM). Plaintiff then placed the bottle of alcohol he had been holding on the ground and charged toward Officer Holmes by taking two steps toward him. (1:17:01 AM). Officer Holmes then punched Plaintiff in the face, grabbed him, and threw him to the ground. (1:17:01 AM–1:17:05 AM). Officer McCreary also hit Plaintiff with his flashlight once while Officer Holmes struggled to take Plaintiff to the ground. (1:17:04 AM). After being punched, thrown, and hit, Plaintiff fell to the ground next to his brother. (1:17:06 AM).

Officer McCreary then yelled "gun" because he saw a gun in the small of Plaintiff's brother's back. (Docs. 25-7 at p. 66; 25-8 at p. 79). According to Officer Holmes, because Officer McCreary yelled "gun," he kicked Plaintiff in the head. (Doc. 25-8 at p. 79; 1:17:05 AM). Neither Officer McCreary nor Officer Holmes saw either Plaintiff or his brother reach for a gun, nor does the video show either man reaching for a gun. (1:16:57 AM–1:17:07 AM). The video also reflects that Plaintiff's brother

lay motionless on the ground after Officer Holmes tased him. (1:16:57 AM–1:17:07 AM).

After kicking Plaintiff, Officer Holmes put his left knee on Plaintiff's back to secure him on the ground. (1:17:12 AM). About a minute and a half later, with Officer Holmes still kneeling over Plaintiff, Plaintiff resisted Officer Holmes by struggling with him on the ground. (1:18:45 AM). About a minute later, Office Latour[3] of the LSU Police Department arrived in a police cruiser. (1:20:00 AM). Officer McCreary handed him a handgun, which belonged to Chase Huval. (Doc. 25-4 at p. 36). Officer Holmes and Officer Latour then flipped Plaintiff onto his stomach and handcuffed him. (1:20:27 AM). After they handcuffed Plaintiff face first on the ground, Plaintiff rolled onto his back so he could breathe. (Doc. 25-3 at p. 29). Officer Latour then told Plaintiff to roll back over and he used his feet to roll Plaintiff back onto his stomach. (1:20:54 AM; Doc. 25-3 at p. 29). Officers Latour and Holmes then grabbed Plaintiff by the arms to roll him on his stomach. *Id.*

After turning Plaintiff onto his stomach, Officer Latour put his left foot on Plaintiff's back to keep him on his stomach for about forty seconds. (1:21:02 AM – 1:21:40 AM). After Officer Latour removed his foot from Plaintiff's back, Officer Holmes knelt over Plaintiff and held him down for another minute, until he lifted Plaintiff off the ground. (1:21:40 AM–1:22:43 AM). Officer Latour testified that he wanted to keep Plaintiff on his stomach so that he could not kick or resist any further.

---

[3] By separate Order, the Court denied Plaintiff's Motion to amend its complaint to add Officer Latour as a defendant.

(Doc. 25-4 at p. 43). Officer Holmes and Officer Latour then walked Plaintiff to Officer Latour's police cruiser while holding onto either side of Plaintiff. (1:22:51 AM).

While Officers Holmes and Latour took him to a police cruiser, one of the officers, located at Plaintiff's "eight o'clock" hit him with an elbow on the left side of his face. (Doc. 25-3 at p. 30–31). Plaintiff, though, could not see which officer elbowed him. *Id.* Another witness saw an LSU officer elbow Plaintiff, but she said that the officer who elbowed Plaintiff was not one of the two officers who carried him toward the police cruiser. (Doc. 28-16 at p. 2). Officers then took Plaintiff to a local jail, and released him a few hours later. (Doc. 25-3 at p. 33–36). Plaintiff suffered bruises to his ribs and back, and temporomandibular joint dysfunction to his jaw. (Doc. 25-3 at p. 28). Plaintiff has also experienced anxiety, suffers nightmares, and has trouble sleeping. *Id.* at p. 50.

Plaintiff was charged with aggravated assault and resisting an officer. (Doc. 28-9). On March 10, 2015, Plaintiff enrolled in the East Baton Rouge Parish District Attorney's Office Pretrial Intervention Program ("PTI"). (Docs. 25-9 and 41-2). As part of the program, Plaintiff paid a $500 enrollment fee and a $30 monthly supervision fee. (Doc. 25-9 at p. 4). Plaintiff also agreed to work a suitable job or be enrolled in school, not to leave town without prior approval, to be subject to urine tests, and to make restitution. *Id.* He also acknowledged that he would be terminated from PTI and prosecuted for the original charges filed against him if he was arrested on new charges. *Id.* On October 8, 2015, Plaintiff completed PTI, (Doc. 41-3), and the District Attorney dismissed the case against him two weeks later. (Doc. 28-12).

5

In a letter informing Plaintiff that he had completed the pretrial intervention program, the District Attorney wrote that Plaintiff's "record will show no conviction for the charges(s) in question, and there will be no prosecution[.]" (Doc. 42-3).

Plaintiff sued the Baton Rouge Police Department, Officer Troy McCreary, Officer Ory Holmes, the LSU Police Department, and Barco Entreprises d/b/a the Chimes in the 19th Judicial District Court, Parish of East Baton Rouge, Louisiana. (Doc. 1-2 at p. 2–10). Invoking the Court's federal question jurisdiction, Defendants then removed the case to this Court on August 22, 2016. (Doc. 1). Plaintiff claims that Defendants are liable under 42 U.S.C. §1983 for violating his Fourth and Fourteenth Amendment rights. (Doc. 1-2 at p. 6–7). Plaintiff also brings state law claims for battery, false arrest, and false imprisonment, and intentional infliction of emotional distress against Defendants. *Id.* at p. 6. Plaintiff also claims that the Chimes is liable for negligent supervision, and negligent hiring. *Id.* at p. 7. On December 13, 2017, the Court granted Plaintiff and Barco Enterprises Joint Motion for Partial Dismissal, dismissing all claims brought by Plaintiff against Barco Entreprises d/b/a the Chimes. (Doc. 34).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing

that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (1986) (quotation marks and footnote omitted).

When determining whether the movant is entitled to summary judgment, the

Court "view[s] facts in the light most favorable to the non-movant and draw[s] all

reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d

528, 533 (5th Cir. 1997) (citing *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th

Cir.1994)). At this stage, the Court does not evaluate the credibility of witnesses,

weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*,

939 F.2d 1257, 1263 (5th Cir. 1991). However, if the evidence in the record is such

that a reasonable jury, drawing all inferences in favor of the non-moving party, could

arrive at a verdict in that party's favor, the motion for summary judgment must be

denied. *Id.* at 1263. On the other hand, the non-movant's burden is not satisfied

merely upon a showing of "some metaphysical doubt as to the material facts, by

conclusory allegations, by unsubstantiated assertions, or by only a scintilla of

evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## III. DISCUSSION[4]

### A. Plaintiff's Claims Against LSU

Plaintiff claims that LSU is liable under § 1983 for violating his Fourth and

Fourteenth Amendment rights. (Doc. 12 at p. 5). LSU argues that Plaintiff's claims

---

[4] LSU moved to strike Exhibit 3 to Plaintiff's Opposition to LSU's Motion for Summary Judgment, which is a timeline of the video surveillance. (Doc. 61-1). LSU argues that the timeline should be stricken because it contains hearsay and self-serving opinion testimony. *Id.* A party can only object to evidence at the summary judgment stage if it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c). LSU, however, only argues that it is not admissible in its present form, and not that it cannot be presented in an admissible form at trial. Therefore, LSU's Motion to Strike is denied.

against it should be dismissed because LSU is not a person under § 1983. (Doc. 25-2 at p. 5–6). Section 1983 is limited to claims against "persons." A State is not a "person" under § 1983. *Will v. Michigan*, 491 U.S. 58, 65 (1989). And Louisiana's public university's including LSU are arms of the state, and are not persons under § 1983 subject to suit. *See Jarvis v. Louisiana State Univ. Health Scis. Ctr.*, No. 06-CV-4384, 2007 WL 2993862, at *3 (E.D. La. Oct. 10, 2007). Plaintiff's § 1983 claims against LSU are therefore dismissed.

### B.    Plaintiff's Claims Against the Baton Rouge Police Department

The Baton Rouge Police Department seeks to dismiss the claims against it because Plaintiff has not provided evidence that his rights were violated as a result of an official policy, and municipalities cannot be held liable under § 1983 based on vicarious liability. (Doc. 28-1 at p. 10). "Municipal liability under 42 U.S.C. § 1983 requires proof of 1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Plaintiff has provided no evidence— nor does he even argue—that any official policy led to his injuries. (Doc. 42). Additionally, under § 1983, municipalities cannot be held liable based on vicarious liability, and so Plaintiff cannot hold the Baton Rouge Police Department liable for the actions of Officer McCreary and Holmes. *See Rivera v. Houston Indep. Sch. Dist.*,

349 F.3d 244, 247 (5th Cir. 2003). Plaintiff's § 1983 claims against the Baton Rouge Police Department are therefore dismissed.

### C.    *Heck* Doctrine

Defendants next argue that Plaintiffs claims are barred under the *Heck* doctrine. (Docs. 25-2 at p. 8, 28-1 at p. 8). In *Heck v. Humphrey*, 512 U.S. 477 (1994) the Supreme Court held that a state prisoner cannot challenge the constitutionality of his criminal conviction in a civil suit for damages under § 1983. The *Heck* rule rests on the "principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 486. Instead, "habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983." *Id.* at 482 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973). Accordingly, the Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486–87.

Behind this backdrop, Defendants contend that Plaintiff's successful completion of a pretrial intervention program precludes him from bringing a § 1983 action arising from his arrest under *Heck*. (Docs. 25-2 at p. 8, 28-1 at p. 8). The Fifth Circuit has not directly addressed this issue, and the Courts of Appeal are split on

whether *Heck* applies to pretrial diversion programs. The Sixth, Tenth, and Eleventh Circuits hold that completing a pretrial diversion program that does not result in a conviction does not preclude a § 1983 suit. *See Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1095 (10th Cir. 2009); *McClish v. Nugent*, 483 F.3d 1231, 1234 (11th Cir. 2007); *S.E. v. Grant Cty. Bd. of Educ.*, 544 F.3d 633, 639 (6th Cir. 2008). These Courts reason that because pretrial diversion programs do not result in a conviction in the first place, *Heck* does not apply. *McClish*, 483 F.3d at 1251–52; *Vasquez Arroyo*, 589 F.3d at 1096; *Grant Cty.*, 544 F.3d at 639.

By contrast, the Third Circuit holds that pretrial diversion bars a later § 1983 suit. *See Gilles v. Davis*, 427 F.3d 197, 211 (3d Cir. 2005).[5] In *Gilles*, the Third Circuit held that Pennsylvania's Accelerated Rehabilitation Disposition program barred a later §1983 suit because it imposes burdens not consistent with innocence including probation, restitution, costs, and reasonable charges to account for the expense of administering the program. *Id.*

The Fifth Circuit has specifically left open whether completing a pretrial diversion program bars a later §1983 suit under *Heck*. *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656 (5th Cir. 2007). In *DeLeon*, the plaintiff brought false arrest and imprisonment, illegal search and seizure, excessive use of force, and malicious prosecution claims against a city and its police arising from his arrest. *Id.* at 651. Before bringing these claims, however, the plaintiff received Texas deferred

---

[5] Several district courts within the Fifth Circuit have also concluded that pretrial diversion programs bar later § 1983 suits. *See Morris v. Mekdessie*, No. 14-CV-1741, 2016 WL 740340, at *3 (E.D. La. Feb. 25, 2016); *Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 508 (M.D. La. 2013); *Bates v. McKenna*, No. 11-CV-1395, 2012 WL 3309381, *5 (W.D. La. Aug. 13, 2012).

adjudication, but had not completed it. *Id.* In Texas, after a defendant enters a guilty

or nolo contendre plea, and a judge hears evidence to substantiate the defendant's

guilt beyond a reasonable doubt, the judge may defer entering a criminal conviction,

and place the defendant on community supervision or confinement. *Id.* at 653, 656.

The Fifth Circuit held that although plaintiff had not received a judgment of

conviction or sentence, that the deferred adjudication barred his § 1983 suit because

deferred adjudication in Texas is like a conviction. *Id.* at 655. The Fifth Circuit,

however, declined to decide "whether a successfully completed deferred adjudication,

with its more limited collateral consequences under Texas law, is also a conviction for

the purposes of *Heck*[.]" *Id.* at 656.

Unlike the Texas deferred adjudication in *Deleon*, the East Baton Rouge

District Attorney's Pretrial Intervention Program ("PTI") is not like a conviction.

First, unlike in *Deleon*, where the Texas court determined whether the defendant

could participate in pretrial diversion, here courts have no input into whether a

defendant may enter PTI. Second, unlike *Deleon*, where a judge heard evidence to

substantiate the defendant's guilt beyond a reasonable doubt, PTI requires no judicial

determination of guilt. Instead, a defendant enters PTI solely at the discretion of the

District Attorney without any endorsement from a court. The only right Plaintiff

waived, however, was his right to a speedy trial, but this does not indicate that a

defendant is guilty. (Doc. 41-2 at ¶ 18). Even in Plaintiff's agreement with the

District Attorney he did not agree that he was guilty. (Doc. 41-2).

Third, unlike *Deleon*, where the Texas judge could have placed the defendant on community supervision, or even a period of confinement during the deferred adjudication period, here there is no mechanism for courts to place a defendant on community supervision. To be sure, Plaintiff agreed to certain conditions, including urine tests, and not to be rearrested, but these conditions were monitored by the District Attorney's Office and not a court. Finally, and above all, by the very terms of the agreement, at the end of PTI Plaintiff received no conviction. The District Attorney's Office dismissed his case. The pretrial diversion program Plaintiff entered is therefore not like a conviction, and it does not bar his § 1983 suit.[6]

### D.     Plaintiff's § 1983 Claims Against Officer Holmes and McCreary

Plaintiff claims that Officers Holmes and McCreary are liable for false arrest and excessive use of force under the Fourth Amendment. (Doc. 1-2 at p. 6). In a claim brought against a defendant in their individual capacity, qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A plaintiff overcomes qualified immunity if he can show: "(1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively

---

[6] Finally, on a practical note, if the Court adopted the opposite conclusion, prosecutors could seek to insulate themselves under *Heck* by offering pretrial diversion (which is an extraordinarily enticing program) to shield themselves from liability.

unreasonable in light of clearly established law at the time of the incident." *Waltman*

*v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008).

### 1. *False Arrest*

Plaintiff claims that Officer McCreary and Holmes are liable under § 1983 for false arrest because the officers arrested Plaintiff without probable cause. (Doc. 42 at p. 3). "The right to be free from arrest without probable cause is a clearly established constitutional right." *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). "[T]he test for whether the 'police officer had probable cause to arrest is if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime.'" *Id.* (quoting *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992)).

Officers McCreary and Holmes contend that they had probable cause to arrest Plaintiff for resisting a police officer under La. R.S. § 14:108.2. (Doc. 28-1 at p. 13–14). La. R.S. § 14:108.2(A)(3), the resisting arrest statute, provides that (1) when a police officer is "engaged in the performance of his duties as a police officer" (2) "the offender has reasonable grounds to believe the victim is a police officer who is arresting, detaining, seizing property, serving process, or is otherwise acting in the performance of his official duty"; (3) it is unlawful to "[i]njur[e] or attempt[] to injure a police officer."

The first element of resisting arrest is that the victim is a police officer engaged in his duties as a police officer. La. R.S. § 14:108.2(A)(3). Officer Holmes was a police officer with the Baton Rouge Police Department at the time of the events in question.

(Doc. 25-8 at p. 154). He was also engaged in the performance of his duties because he was investigating a complaint about a large fight and he walked toward Plaintiff because he thought someone had fled the fight in the direction of Plaintiff. (Doc. 25-7 at p. 22–23).

The second element of resisting arrest is that "the offender has reasonable grounds to believe the victim is a police officer who is arresting, detaining, seizing property, serving process, or is otherwise acting in the performance of his official duty[.]" La. R.S. § 14:108.2(A)(3). Here, the evidence taken in the light most favorable to the Plaintiff shows that Officer Holmes was in full uniform when he approached Plaintiff, (Doc. 25-8 at p. 108), but that he did not verbally identify himself as a police officer. (Doc. 25-3 at p. 28). Even though Officer Holmes did not identify himself, a reasonable person in Plaintiff's position would have concluded that someone in a full police uniform was, in fact, a police officer.

The third element, requires that a person "[i]njur[e] or attempt[] to injure a police officer." La. R.S. § 14:108.2(A)(3). Attempt is as "[a]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object[.]" La. R.S. 14:27. Here, after Officer Holmes tried to grab Plaintiff, Plaintiff put the bottle of alcohol he was holding on the ground and charged toward Officer Holmes, taking two steps toward him. (1:16:56 AM–1:17:00 AM). Taking two aggressive steps toward Officer Holmes was an act made to injure Officer Holmes. It is not clear whether Plaintiff intended to tackle, punch, shove, or hit Officer Holmes, but there is no question that there was probable

14

cause to believe Plaintiff charged toward Officer Holmes in an attempt to injure him. Officer Holmes therefore had probable cause to believe that Plaintiff charged toward him in an attempt to injure him.

Plaintiff contends that because Officer McCreary had shoved his brother and Plaintiff feared that his brother had been shot it was reasonable for him to charge toward Officer Holmes. (Doc. 42 at p. 6). Plaintiff does not develop this argument with any case law, but asserts in a conclusory fashion that "given these circumstances" the officer lacked probable cause for the arrest. *Id.* Piecing together Plaintiff's argument, he seems to argue that it was somehow reasonable for him to charge at Officer Holmes in defense of his brother.

To be sure, under Louisiana law, "[i]f no probable cause exists for an arrest, an individual has the right to use such force as is necessary to resist an unlawful arrest." *State v. Sims*, 851 So. 2d 1039, 1045 (La. 2003) (internal quotation omitted). But the Fifth Circuit has repeatedly left open whether evidence of an affirmative defense, such as self-defense, is relevant to a probable cause determination. *See Johnson v. Norcross*, 565 F. App'x 287, 291 (5th Cir. 2014); *United States v. Craig*, 381 Fed. Appx. 459, 461 (5th Cir. 2010); *Piazza v. Mayne*, 217 F.3d 239, 246–47 (5th Cir. 2000). An officer has a right to qualified immunity if a right is not clearly established. *Pearson*, 555 U.S. at 231.

Here, it not clearly established that an officer must evaluate affirmative defenses, including self-defense when determining if there is probable cause to make an arrest because there is no controlling Supreme Court of Fifth Circuit law on the

15

issue. Thus, even if Plaintiff was justified in charging toward Officer Holmes to defend his brother and even if his brother had been unlawfully arrested, it is not clearly established that self-defense is relevant to a probable cause determination, and thus Officers Holmes and McCreary are entitled to qualified immunity.

## 2. *Excessive Use of Force*

Plaintiff claims that Officers McCreary and Holmes violated his Fourth Amendment rights by using excessive force. (Doc. 1-2 at p. 6). To prevail on an excessive force claim, a plaintiff must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012). The reasonableness of an officer's conduct depends on the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).[7]

Courts must adopt "the perspective of a reasonable officer on the scene, rather than [judge] with the 20/20 vision of hindsight." *Id.* If a Court concludes that an officer's use force was unreasonable, it must also determine whether the officer is entitled to qualified immunity. *See Pearson*, 555 U.S. at 231. Although Plaintiff has grouped his excessive use of force claims together, after reviewing the video

---

[7] These are the *Graham* factors.

surveillance and Plaintiff's briefs, the Court will address three instances when the officers on scene may have used excessive force.[8]

### a.    The Initial Takedown

The first question is whether Officers Holmes and McCreary used excessive force in initially taking down Plaintiff. Neither officer disputes that Plaintiff suffered an injury as a result of the takedown so the Court will focus on whether the force used was clearly unreasonable. It is clearly established that "the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it" but that "once an arrestee stops resisting, the degree of force an officer can employ is reduced." *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016) (internal quotations omitted). For example, the Fifth Circuit held in *Bush* that it was objectively unreasonable for an officer to slam an arrestee's face into a vehicle when the arrestee "was not resisting arrest or attempting to flee." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008). Similarly, in *Newman* the court found that it was objectively unreasonable for officers to tase and strike an arrestee with a nightstick when the arrestee's "behavior did not rise to the level of active resistance." *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012) (internal quotations omitted).

Taking the evidence in the light most favorable to Plaintiff, Officers Holmes, and McCreary used reasonable force to initially takedown Plaintiff because he was actively resisting arrest. Plaintiff charged toward Officer Holmes by taking two steps toward him, and to defend himself, Officer Holmes punched Plaintiff and threw him

---

[8] To the extent Plaintiff claims that the officers used excessive force at other times, the Court finds that the officers acted reasonably.

to the ground. (1:16:57 AM–1:17:05 AM). To assist Officer Holmes, Officer McCreary hit Plaintiff with his flashlight as Officer Holmes tried to control Plaintiff. (1:17:04 AM). All of this force was used to control and subdue Plaintiff, which under the circumstances was reasonable.

But taking the evidence in the light most favorable to Plaintiff, there is a dispute of fact about whether it was objectively unreasonable and violated clearly established law for Officer Holmes to forcibly kick Plaintiff in the head after he fell to the ground. When Officer Holmes kicked Plaintiff in the head, Plaintiff was no longer actively resisting arrest. (1:17:05 AM). He had just been punched by Officer Holmes and hit by Officer McCreary, and he had collapsed on the ground. *Id.* Officer Holmes argues that kicking Plaintiff was reasonable because when he brought Plaintiff to the ground, Officer McCreary saw a gun in the small of Plaintiff's brother's back and yelled "gun." (Docs. 25-8 at p. 79–80; 25-7 at 66). Officer Holmes contends that he kicked Plaintiff to keep him from getting off of the ground and to prevent Plaintiff from reaching for the gun. (Doc. 28-1 at p. 5–6).

Although a jury might ultimately conclude that Officer Holmes acted reasonably when he kicked Plaintiff in the head, there is a material dispute of fact on this issue. When Officer Holmes kicked Plaintiff, he had already taken Plaintiff to the ground and there is no evidence that either Plaintiff or his brother were reaching for a gun or making an aggressive movements. Indeed, Plaintiff lay motionless on the ground after Officer Holmes punched and threw him to the ground. Officer Holmes argues that Plaintiff could have reached for the gun, but the Court finds that

18

based on the video it is unclear whether Plaintiff could have even reached the gun based on where he had fallen. The Court therefore grants summary judgment to Officer McCreary and Officer Holmes as to the initial takedown; however, the Court denies summary judgment to Officer Holmes for his kick to Plaintiff's head.

b.      **Handcuffing and Rolling Plaintiff on his Stomach**

The next question is whether Officer Holmes used excessive force when he handcuffed Plaintiff and flipped Plaintiff onto his stomach. (Doc. 41 at p. 6). It is clearly established that "the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it" but that "once an arrestee stops resisting, the degree of force an officer can employ is reduced." *Cooper*, 844 F.3d at 524. Here, taking the evidence in the light most favorable to Plaintiff, when Officer Latour arrived, he and Officer Holmes grabbed plaintiff by his arms, flipped him on his stomach and handcuffed him. (1:20:20 AM–1:20:45 AM). Plaintiff then tried to roll onto his back so he could breathe. (1:20:49 AM; Doc. 25-3 at p. 29). Officer Latour told Plaintiff to roll back onto his stomach. (Doc. 25-3 at p. 89). Officer Latour then used his feet to roll Plaintiff back onto his stomach. (1:20:54 AM). Officer Latour and Holmes then grabbed Plaintiff with their hands to roll him on to his stomach. *Id.* After putting Plaintiff on his stomach, Officer Latour put his left foot on Plaintiff's back to keep him on his stomach for about forty seconds. (1:21:02 AM – 1:21:40 AM). Officer Latour testified that he wanted to keep Plaintiff on his stomach so that he could not kick or resist any further. (Doc. 25-4 at p. 43). Officer Holmes then kneeled on Plaintiff's back. (Doc. 1:21:15 AM).

19

Although the video shows that Officer Holmes grabbed Plaintiff and forcibly flipped him on his stomach, the Court concludes that he acted reasonably. Plaintiff had been combative and had recently charged toward Officer Holmes. He had also struggled with Officer Holmes after the officer brought him to the ground. It was therefore reasonable for Officer Holmes to forcibly put Plaintiff onto his stomach to handcuff him, and to make sure that he could not kick or otherwise resist him.

### c.    Elbowing Plaintiff

The final question is whether one of the officers used excessive force when he elbowed Plaintiff in the face. Plaintiff testified that while Officer Holmes and Latour took him to a police cruiser, one of the officers, located at his "eight o'clock" hit him with an elbow on the left side of his face. (Doc. 25-3 at p. 30–31). When the officers took Plaintiff to the police cruiser, they move out of view of the video surveillance camera, and there is therefore nothing to indicate whether or not an officer elbowed Plaintiff. (1:22:43 AM–1:22:52 AM). The Court must then assume for the purposes of summary judgment, that one of them elbowed Plaintiff for no reason.

It is objectively unreasonable and violates clearly established law to elbow a fully complaint arrestee. *See Ramirez*, 716 F.3d at 377–78. Neither Officer argues otherwise. (Docs. 18-1 at p. 17 and 25-2 at p. 15). Officers Holmes and McCreary similarly claim that there is no evidence that they elbowed Plaintiff because another witness, Cherie Burkett, testified that an LSU officer elbowed Plaintiff, but the officer

who elbowed Plaintiff was not one of the two officers—Officer Holmes and Latour—that were carrying Plaintiff toward the police cruiser. (Doc. 28-16 at p. 2).

The Court finds that it would be improper to grant Officer Holmes or McCreary summary judgment because Plaintiff cannot specifically identify the officer that elbowed him, and there is a factual dispute about which officer may have elbowed Plaintiff (if at all). Indeed, courts should not grant summary judgment in favor of police officers just because a plaintiff cannot specifically identify which officer struck him when it is undisputed that the officers were present. *See Meeler Morris v. Pierce*, No. 07-CV-0080, 2008 WL 4287967, at *7 (W.D. La. Sept. 17, 2008). Taken in the light most favorable to Plaintiff, as the Court must on summary judgment, there is a triable issue of fact as to whether Officer Holmes or McCreary used excessive force by elbowing Plaintiff in the head.

E. **Plaintiff's State Law Claims**

1. *False Imprisonment*

Plaintiff claims that Defendants are liable for false imprisonment. (Doc. 1-2 at ¶ 29–31). The Louisiana tort of false imprisonment consists of two elements: (1) detention of the person; and (2) the unlawfulness of the detention. *Kennedy v. Sheriff of East Baton Rouge*, 935 So.2d 690 (La. 2006). If an officer has probable cause for an arrest, they are not liable for false imprisonment. *McMasters v. Dep't of Police*, 172 So. 3d 105, 116 (La. Ct. App. 2015). As the Court has already explained, there was probable cause to arrest Plaintiff for resisting arrest, and thus Plaintiff's false imprisonment claim is dismissed.

21

## 2. Battery

Plaintiff claims that Defendants are liable for battery. (Doc. 1-2 at ¶ 26–28). When, as here, police lawfully arrest someone, police commit a battery if they use excessive force. *Kyle v. City of New Orleans*, 353 So.2d 969, 353 (La. 1977). "Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case." *Id.*; *LaBauve v. State*, 618 So. 2d 1187, 1193 (La. Ct. App.). For the same reasons that the Court has already noted, the Court finds that there is a material dispute of fact about whether Officer Holmes used excessive force when he kicked Plaintiff in the head and whether Officer McCreary or Holmes used excessive force by elbowing Plaintiff in the face.

Under Louisiana law, an employer is vicariously liable for the actions of its employees if the employee is "acting within the course and scope of his employment at the time of his wrongful act." *Lamkin v. Brooks*, 498 So. 2d 1068, 1070 (La. 1986). The evidence in the light most favorable to Plaintiff shows that Officer McCreary and Holmes were acting within the course and scope of their employment with the Baton Rouge Police Department at the time they arrested Plaintiff, and therefore there exists a material dispute of fact about whether the Baton Rouge Police Department is vicariously liable for the actions of the two officers.

Next, the Court must consider whether LSU is vicariously liable for Officer Latour's actions in rolling Plaintiff onto his stomach with his feet and elbowing Plaintiff. Here, taking the evidence in the light most favorable to Plaintiff, the Court finds that Officer Latour acted reasonably based on the totality of the circumstances

when he rolled Plaintiff onto his stomach. Plaintiff had recently charged toward Officer Holmes, and it was not unreasonable for Officer Latour to forcibly roll Plaintiff onto his stomach to make sure that he could not kick or otherwise resist him. As the Court discussed previously, there is, however, a material dispute of fact about whether Officers Latour, McCreary, or Holmes elbowed Plaintiff in the face when they walked him to Officer Latour's police cruiser. There is therefore a material dispute of fact about whether LSU is vicariously liable for Officer Latour's actions in elbowing Plaintiff.

### 3. Intentional Infliction of Emotional Distress

Plaintiff claims that Defendants are liable for intentional infliction of emotional distress ("IIED"). (Doc. 1-2 at ¶ 32–34). The elements of intentional infliction of emotional distress, include: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). Extreme and outrageous conduct includes conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.*

First, the Court concludes that there is a dispute of fact about whether Officer Holmes engaged in extreme and outrageous conduct by kicking Plaintiff in the head. There is also a dispute of fact about whether Officers Holmes, Latour, or McCreary

elbowed Plaintiff for no reason. The Court likewise concludes that this is extreme and outrageous conduct, if true, because it would evince wanton and needless force.

Second, the Court concludes that there is a dispute of fact about whether Plaintiff suffered severe emotional distress. Plaintiff testified that he suffered nightmares, anxiety, and had trouble sleeping after the night in question. Doc. 25-3 at p. 50). A jury could conclude that this is severe emotional distress. Third, there is also a material dispute of fact about whether Officers Holmes, Latour, or McCreary knew that it was substantially certain that severe emotional distress would result from their actions. If true, all three officers used excessive force, which under the circumstances, would be substantially certain to result in severe emotional distress. To the extent that Plaintiff based his IIED claims on other actions, the Court finds that these actions were not extreme and outrageous. Accordingly, there is a material dispute of fact as to whether Officer Holmes is liable for IIED based on his kick to Plaintiff's head, whether Officers Holmes and McCreary are liable on the grounds that they elbowed Plaintiff, whether the Baton Rouge Police Department is vicariously liable for these actions, and whether LSU is vicariously liable for Officer Latour's actions on the grounds that he elbowed Plaintiff.

IV.  CONCLUSION

Accordingly,

IT IS ORDERED that the Motion for Summary Judgment (Doc. 25) filed by the LSU Police Department is GRANTED IN PART and DENIED IN PART.

24

IT IS FURTHER ORDERED that the **Motion for Summary Judgment (Doc. 28)** filed by the Baton Rouge Police Department, Officer Ory Holmes, and Officer Troy McCreary is **GRANTED IN PART and DENIED IN PART**.

IT IS FURTHER ORDERED that the **Motion to Strike (Doc. 61)** is **DENIED**.

Baton Rouge, Louisiana, this 27th day of February, 2018.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**